May it please the Court, my name is William Hobson. Kevin Kelbel and I have the honor of representing Alberto Flores, who is the plaintiff in this Title VII case. Mr. Flores was diagnosed in January of 2007 by his treating psychiatrist with post-traumatic stress disorder, which she related to the hostile work environment that he had suffered in his previous employment with the Phoenix Union High School District at the hands primarily of the principal at Maryville High School, Phillip Verdugo. He had brought previously, he had filed a charge of discrimination alleging national origin discrimination and a hostile environment as a result of that discrimination. He provided, the case proceeded through a discovery, there were depositions of various folks, and he provided evidence at the time of summary judgment with respect to the national origin discrimination claim. He, by the way, is a, was born in Guadalajara, in Jalisco, Mexico, but he's a naturalized American citizen. He presented evidence that his supervisor, Mr. Verdugo, had engaged in racist behavior as it related to him, national origin discriminatory behavior as it related to him, had in fact used a specific expression reported to him by Ms. Valle that Mr. Flores doesn't know his Hispanic roots, he was born with a silver spoon in his mouth, and he thinks he's white. That is direct evidence of discriminatory animus. He also presented evidence that in the workplace he had repeatedly told Mr. Verdugo about another employee of his, a front office employee, his secretary, Mrs. Carrillo, who used the expression mojado and mojadito repeatedly, and despite the fact that Mr. Flores had taken that up with Mr. Verdugo at the administrative meetings, he, Mrs. Carrillo, continued to use that term in reference to, and just so the Court is aware, we've provided that in our briefings. Those are vile expressions. In southern Arizona, if you say that to a Latino, those are fighting words. I think that's true in most of the country. They are vile. Under Farragher, the fact that those occur in the workplace, the supervisor is apprised of it and he does nothing about it means that it becomes adopted by the supervisor. And so with respect to the workplace situation, let's take those in order. Yes, Your Honor. Flores knew nothing about his Hispanic background, that he had been fed with a silver spoon and he acted like he was white. Correct. Supplemental excerpts of Record 107, 108. That was a single comment described to Flores, to Verdugo, right? Once. That was a comment by, yes, by Ms. Byer. How do you get around the language of the McGinnis case, one of our cases, a simply causing an employee offense based on an isolated comment is not sufficient to create actionable harassment? Well, it's not just the one comment, Your Honor. The fact that he is apprised of the one comment by itself would not make a hostile environment. Not necessarily. I have to tell you, Your Honor, I'm not sure I do agree with you. In the Cordova case, there was one comment about it. Well, you would have to agree with McGinnis, wouldn't you? Well, that's what McGinnis held. That's what McGinnis holds. But on the Cordova case, there was one comment about such-and-such person being a dumb Mexican, and the Court said that's enough. So that's Cordova v. State Farm. And I'm embarrassed to tell you that we referenced in our pleadings, but I, in preparation last night, I noticed it's, it's, it's. Is that cited in your brief? It's cited in the brief, but it's not in the table of authorities, Your Honor. We inadvertently didn't bring it up. And I'll be happy to. The Court is known for reading the tables of authority. I, I, I understand, Your Honor. And last night as I, as I was, as I was reviewing, I realized, Lordy, we cited it in the brief, and I think it's at page 20 in the brief. Is your, is your statement, counsel, that the Cordova case held that, quote, dumb Mexicans said once provides a hostile work environment? It provides evidence of discriminatory intent, discriminatory enemy. But then you have to show that besides the intent, there were acts which caused discrimination. Well, you don't have to show, Your Honor, that each of the, of the, that, that each adverse, each adverse employment situation is tied to a, for a hostile environment harassment case. You don't have to show that the hostile environment at each step is accompanied with you're a dumb Mexican or you're, you're a Mojave. You don't have to show that. What you have to show that there is some evidence of, of a, of discriminatory animus as it relates to national origin and that he is suffering an adverse, suffering a hostile work environment. You don't, each, each instance of hostile work environment doesn't have to be tied to a comment reflecting a discriminatory, a specific discriminatory animus. And you don't have to show that Mr. Verdugo then discriminated against him in some adverse employment action. And what is that? Well, he, he made, he, he reported that Mr., Mr. Verdugo was abusive to him. He yelled at him. He, and that's in his, in his, in his declaration attached to his response to the motion for summary judgment. He was, he was called to duties for, for long hours when others weren't. He was, he, he, he described being a. Well, he was called to duty when Verdugo said, I'm staying late and so are you. So others were. Well, actually he was called to duty more than Mr., than, than others were. I would also point out to the Court that other, other assistant principals who worked under Verdugo reported that, that Mr. Flores was, was subjected to a special mistreatment by Mr. Verdugo. Jaime Rodriguez says that in his declaration. And the other thing is that in terms of the hostile work environment, a number of people reported that Mr. Verdugo was abusive to them and they left. So. But not because of race, color, creed or national origin. He had a harsh management style, and that comes across. Well, I, I understand. But, but, but. It wasn't because of race. Well, maybe it was and maybe it wasn't. I represent Mr. Flores. Mr. Flores reported that he was, Mr. Verdugo was tolerant of, of conduct that reflected national origin, part of what motivated him was national origin discrimination. The, the comment that, that, that he, he was acting white, he, he was born in Silver Spoon, he doesn't know his Hispanic roots, Mr. Verdugo was saying he didn't know Hispanic, my Hispanic roots, forgetting or, or reflecting, I mean, it's like the comment that, that an African American might make about another African American. He's an Oreo. It, it, it clearly has, it's, it's tinged by discriminatory animus to say that sort of thing. He's accusing them of being white. Correct. Correct. All right. Now, talking about career. Your, Your Honor, in, in, in Canada, I mean, that, as it relates to Latino people being disparaging to say he's, he thinks he's white is not a, is not a complimentary observation, and it's, it, it is disparaging, and it's racially tinged. All right. And then Ms. Carrillo, her comments, let's see if I've got this right. Were any of her comments directed at Flores? No. No. None of the comments were physically threatening. No. Well. Did the remarks in any way affect Flores's work? They affected his work environment because he complained about that to Mr. Verdugo, and repeatedly in, in, that was taken up in administrative meetings, and he complained to Mr. Verdugo about that, and it was not resolved. His complaints because he didn't like the environment of listening to Mrs. Carrillo, it didn't have any proximate relation to Flores not being able to do his work. Well, it, it interfered with his work, sure. How? Well, because it's, it's, it's racist language in the workplace. Your Honor, consider the situation of, of. Can I examine you step by step? Yes, Your Honor. Was there any report that Flores's work was deficient as assistant principal, and was that tied into listening to Mrs. Carrillo use these words? I don't believe so. All right. Were the remarks of Mrs. Carrillo directed directly to the Mexican parents or the children, or were they simply references about them? My understanding is they were directed to the parents and the children. Where is your understanding based on the record? That's in Mr. Flores's declaration, Your Honor. I think it's, it's paragraph, it's Exhibit 3 attached to his response to the separate statement of facts. And Flores says that he heard Carrillo make these remarks to the parents and to the children, mojados and mojaditos. Repeatedly. Now, Your Honor, it, it does not matter whether they're said to the, the parents or not, by the way, I think. If they are in the workplace, I mean, if, if you're. One of the elements in Harris v. Forklift is whether the remarks humiliated persons or were mere offensive utterances. I understand. And that's what I'm trying to get at. Your claim is. The infected. The vision is that they humiliated the parents and students. But I represent Mr. Flores, who is, by the way, a Mexican national to which the terms would apply. And in fact. Talking about him. She was talking about other people. I understand. But if, if you are standing in the presence of a, of, of, if you're an African-American person standing in the presence of, of, of, of some, another African-American person to whom the N-word is being addressed, it still affects you. It still affects you, Your Honor. It's a racist word being manied about the workplace. It affects your sensibilities. But does it humiliate you or is it a mere offensive utterance? I submit it's humiliating. Your Honor, I would also point out that there was lots of other evidence of discriminatory animus in the workplace. And I want to be clear that these, that the discriminatory animus that I'm talking about isn't directed at national origin discrimination. But Mr. Radugo is reported and it's in the declarations that we've attached. I think these are 16 to 20 to our response to the second statement of facts. Ms. Kelly Bryant said that she, that Mr. Radugo referred to coaches as faggots, women coaches as I don't want any lesbian coaches here. And he talked about not wanting an African-American coach that Mr. Radugo was, Mr. Flores was trying to hire, didn't want that African-American coach because he's a black man with an attitude. Those are all comments made by Mr. Radugo which are not directed toward national origin, but they do reflect discriminatory animus. And our cases say that to the extent that the employer tolerates that kind of impermissible conduct in the workplace, that reflects on the discriminatory animus of the employer. So that's additional evidence of, direct evidence of discriminatory animus in the workplace. Mr. Flores sought to be transferred. And he was told by Ms. Gutierrez, you can't be transferred because NCLB won't let you be transferred. That's an acronym for No Child Left Behind. At about the same time, she was, the school district was transferring. Mr. Parrish was resigning. Mr. Radugo was transferring. Mrs. Shaw was transferring. And Kelly Bryant was transferring. So Kelly Bryant was not an assistant principal, to be sure. But the other two were assistant principals. And then the NCLB won't allow was a pretext. Well, correct. And then, and then after other people were being transferred who were assistant principals. Now, our cases say, by the way, this goes also to his denial that he was abusive. He was asked in his deposition, Mr. Radugo, if you were abusive. He said, no, I'm not abusive. Our cases say that if a jury considers the statements of a witness and chooses to believe that he is being untruthful, they can infer the ultimate fact of discrimination, the St. Mary's Honor Society and the Reeves case both say that. To the extent that Mr. Radugo says he's accused of hostile environment harassment, he's asked if he's engaged in hostile environment harassment, he says no. And there's all this other evidence that other people, as Your Honor says, he was a hard taskmaster. If the jury chooses to believe, to disbelieve his denial, the inference can be made that he is in fact discriminating in the workplace. So as it relates to the evidence of hostile work environment harassment, I think the facts, the operative consideration is whether a jury on hearing all those facts could have come to the conclusion that Mr. Flores was suffering hostile environment national origin harassment. And I think that the jury could come to that conclusion. If that's the case, it was error to grant summary judgment. With respect to the retaliation claim, Your Honors, issues arose during the course of the litigation, which were kind of odd. Mr. Flores made repeated efforts to take advantage of the grievance process, which is a contractual right, and the district wouldn't process them. They just, they did one and they said, and then Ms. Gutierrez, when she was asked about it, said, well, they're all the same. She wouldn't process them. So he at one point called her and was complaining about it, and what she said to him was, we're not going to help you out unless you fire your lawyer and dismiss your lawsuit. Now, that's the end. And Mr. Flores put in a ---- That's not mischaracterizing the tape. I don't think ---- What she said was that because he had filed his lawsuit and because the district had obtained an attorney, all of Flores's correspondence would be forwarded to the district attorney, which is the normal thing when you have an attorney. Now, she says more than that, Your Honor. In the declaration that he submits and the transcript, she says that if he doesn't ---- unless he withdraws his lawsuit and fires his lawyer, they're not going to process them. And we set that forth in detail in our reply. Finally, interestingly, after being told that he would not be transferred, they involuntarily transferred him to the one place he said, don't send me to Carl Hayden High School because the principal there is Mr. Verdugo's friend and mentor. That's the one place I don't want to go. And that's like being, you know, don't throw me in the briar patch, I suppose. That's the place they transferred him to. And it was shortly after that that he had this breakdown. Well, the adverse actions that he's complaining about here are what? Could you help me really quickly? You've used my time. He's yelled at and abused in the workplace. What happened to him adversely? Was the transfer the principal? Well, the transfer is one of them, correct. Well, the denial of the transfer. Was he fired? No, he was not fired. He was demoted? He was not demoted. He was lateraled. And under our cases, a lateral transfer can be an adverse action. Pesentino and others' cases say that. He was transferred to the one place he said, don't send me. So they sent him there. You know, I mean, it's clear, I think, that they The damages you want, the remedy you want? We want the case to be reversed and remanded for trial. What do you want at the end of the trial? Well, he's entitled to money damages. He's entitled, he's been off work. He's entitled, I think, to be compensated for his back wages. So he's entitled to Quit? He did not quit. He was ultimately terminated. The district, he was out because of PTSD and the district. It's not in this record, so I'm trying to be careful not to go to that.  Okay, you've used your time. Yes, thank you, Your Honor. May it please the Court. Good morning. Mr. Coley, you see the evidence exactly as presented, right? I do not, Your Honor.  And maybe the place to start is with this so-called evidence. The problem with the evidence, as the rendition in the brief is, is, and as I think pointed out, is not what the record really says. In particular examples is Ms. Gutierrez's testimony. The brief and the argument seems to say that Mrs. Gutierrez made all these statements when, in fact, if you look directly to where it's referenced in her deposition, that's not what she says. She would not agree with counsel that what counsel wanted to say, and that's on page 30 and 40 of her deposition. She was familiar with national origin discrimination claims, page 41, lines 16 and 19 of her deposition. She understood what national origin idea meant. In fact, her husband was born in Mexico. She understood what that was. She did say she hadn't been personally involved in that type of claim, where someone was claiming national origin discrimination, both of Hispanic heritage, but one born in the U.S. and one born in Mexico. She didn't discount those claims because both had a Hispanic background. In fact, what she said, and what Mr. Verdugo said, is until he told us, we didn't know. We had no reason to know. So that's what her deposition testimony says. And I think as you pointed out, what her deposition testimony says is that we didn't refuse to engage in grievance process. We did engage. In fact, they hired outside counsel to do investigations of it, who came back and found we don't find. Further letters came, and another assistant superintendent did an investigation and had a report and came forward. These things were done. All she said, and rightly so, was after receiving a demand letter from an attorney, necessarily those things rise to a certain level, and while maybe improductive, both sides are right in working through counsel at that point. And that's what she said. But she also made clear once she understood what the claim was, she went and looked at it and investigated it. Do you disagree with Mr. Hobson that the statement attributed to Verdugo about Silver Spoon and he's acting white, plus failure to corral Correo for her statements adds up to sufficient evidence that could be presented to a jury on the issue of hostile work environment? Like the district court found, no, I do not agree with that. Tell me why. For several reasons. One, the statement was made in April of 2005. It's undisputed that the information never about what the heritage might have been or where Mr. Flores was born was known to Mr. Verdugo until at least September of 2005. So if what would be entitled as a reasonable inference, not a reasonable fiction of what he might have meant, what he was talking about was an issue that was unrelated to where Mr. Flores was born. And in fact, as you pointed out, he was comparing him, he said he acts like he's white. That is not an inference of national origin discrimination against someone who was born in Mexico. And that is what this case is about. Very specific issue of national origin of someone born in Mexico. Is this a national origin? I don't understand. Is this a national origin claim or is this a hostile work environment claim? Well, it is both to the sense that it was brought before the EEOC as a discrimination claim. And the information brought in the charge outlined the similar complaints that he always had about what they were doing to me. And that information contained was basically they're discriminating and not allowing me to do things because of national origin. It also had the flavor in there that what they're saying to me is offensive. But I would agree that it's simply that one comment, which he found out later wasn't directed at him, would be a mere offensive statement. And that he found out later wasn't what? The comment in April of 2005 that Mr. Flores, I mean, Mr. Verdugo denies wasn't learned by Mr. Flores until some time later. So it wasn't directed. It wasn't directed to him. It was about him, but it wasn't to him. It wasn't told to him, said to him. Right. And at a time when Mr. Verdugo had no idea where Mr. Flores might have been born. So what does that have to do with it? If he makes a statement, he doesn't realize his Hispanic background. He was born with a silver spoon in his mouth. He's acting white. Even if he was wrong about where he was born, it's still a slam on his Hispanic background, isn't it? No, it's not because this is a national origin claim. It has to be because of where I was born. Is that right? This isn't a race discrimination claim or anything like that. So the inference from such a statement is not that the discrimination occurred because you were born in a different country. That's the difference. So in other words, there can be white people born with silver spoons in Mexico. I presume there could. Is that right, that national origin, you have to be born in the country? It's not enough that your parents were born there and brought you here when you were 6 months old? Isn't that still national origin? Discrimination if you're being discriminated against on the grounds that you're a Mexican? But it's not the claim here. What they're saying is he had, the inference is he had a discriminatory intent about me, not because I was born Hispanic with a background, but because I was born in another country. That's the claim. And to draw an inference that that's the intent of the person, you have to have more than what's here. And the next piece ties along with that is, I mean, there has to be something in here that's an adverse action that you can say was because of. I'm sick with hostile work environment. Yes. We haven't discussed the evidence regarding Ms. Carrillo's statements, which if we're going to take it with all intendance in favor of the non-moving party, we have to take as credible. Carrillo used the terms mojados, mojaditos in reference to parents and students. Repeatedly, the matter was brought up in action team meetings, according to Flores. Flores complained directly to Verdugo. Verdugo said that he would take care of it. He would talk to Flores. Why isn't that sufficient evidence to submit to a jury as to whether there was indeed a hostile work environment when Flores, being a Mexican born in Mexico, now an American citizen, can take umbrage and be humiliated by the use of the terms in his mojados and mojaditos? First, I think the record will show that those comments were not made to anyone, that they were comments. That's conceded. Right. He heard them. He overheard them. Well, let's say he overheard a comment. The problem with that and he went to Verdugo and he said get her to stop doing this. Verdugo said he would take care of it, and she kept doing it. Well, the standard requires that there be some specific evidence with regard that you can evaluate of how severe it is, the frequency of such things that happen, whether they're hostile, violence. Frequently and regularly. Right. But as the district court found, that's all he says on his own conclusions. There's no information about the dates those might have occurred, where they might have occurred, who was around. So the district court, we contend, properly found that while you can say that it occurred at least once, there's no evidence that can be presented to a jury as to how frequent it was. Simply saying, oh, it happened all the time, isn't going to be sufficient specificity to present to a jury. And that's we agree that the district court was correct in finding that. That that, along with lots of things in the declaration, which we pointed out, there are many problems in this very voluminous declaration, not only examples of taking Mrs. Gutierrez's testimony completely out of context. Let's stick with Carrillo. Yes. What's wrong with his declaration is that frequently and regularly does not specify sufficiently to allow a trier of fact to consider whether this constituted a hostile work environment. Why is that? Because frequently and regularly means to me every day. Well, he didn't say every day. He didn't give one date in which it was done, not even a single date, a time, a instance. He says that he's showing facts which are really conclusions of law and or conclusions of fact. And he doesn't fit at least the Iqbal standard, right? He doesn't fit the standard sufficient information to present. It's just conclusions that it happened. And it's just his statements without any supporting information. He does argue that there are affidavits and declarations that support him. But if you read those, those in themselves don't support it either. While they show that he is a Mr. Verdugo may have been a difficult manager and they may not have enjoyed working with him, there's nothing in there that talks about national origin discrimination with regard to Mr. Verdugo. So there's no evidence that Mr. When these might have occurred, whether Mr. Verdugo knew about any statements by Mrs. Carrillo, whether they stopped, whether they He makes the allegation, he makes a statement in his affidavit that he told Verdugo about Carrillo and asked Verdugo to take steps to make Carrillo stop, and Verdugo said he would. Right. And there's no evidence to show that it continued after that. There has to be something to show that. Yes, he did. He says, and it continued after that. It's also in his affidavit. Other than his statement, without any evidence whatsoever of what those dates might timing of that issue based on that. Has there been full discovery? Yes, Your Honor. Does the record show that, do you agree the record shows that he is not working because of post-traumatic stress disorder and the stress disorder is related to his work? What happened to him on the job? I have, I would agree that he took leave, extended leave during these periods of time because a doctor had diagnosed him with that and didn't say national origin, but said that the condition. Right. He had a post-traumatic stress disorder because of the way he was treated on the job.  He found a doctor that did say that. Any further questions? Thank you. Your Honor, I think my time is up. It is. Are there any further questions? Thank you. I'm sorry. I choked, literally. The case just argued is submitted.
judges: Sammartino, Schroeder, Bea